Good morning, Your Honors. May it please the Court, I'm Daniel Maynard on behalf of the appellant, Jose Martinez. Mr. Martinez was charged with 8 counts of sex with a ward and 5 counts of aggravated sexual abuse. Mr. Martinez was a prison guard at a federal facility outside of Phoenix, Arizona. During the course of discovery, it was uncovered that during this same time period that there had, I believed, that there had been three female prison guards at the same time period, and they had not been prosecuted. Additionally, there were two black male guards during this same time period, and they had not been prosecuted. So was the theory going to be selective prosecution? Yes. Yes, Your Honor. It was. We were exploring and investigating that possibility. Did two things. What is your evidence that there were about these five? Excuse me, Your Honor. I mean, you said you put in your, you know, counsel did in the motion saying, well, there are these five, we want evidence. There wasn't an affidavit filed or anything supporting that. What is your evidence that they actually are comparable? Just that they weren't prosecuted? That they weren't prosecuted. That's correct. Maybe all the sex in all those other cases was by consent. Consent's not a defense under the statute. Not a legal defense, but that's something that the government could take into account in deciding whether to charge somebody with a criminal, a criminal prosecution, isn't it? I don't think it can under this particular statute, Your Honor. Well, it can take it into account in deciding whether to prosecute. Well, I guess they could have a policy to say we're going to prosecute forcible ones, but as long as they resign, we're not going to prosecute nonforcible ones. I believe that under 182243b ---- If you had an explicit policy that said that, it would be a valid prosecutorial policy and it would not be a selective prosecution. Is that right? If they had that policy. Okay. Okay. We don't know whether they did. What we ---- I understand that, but that's what Judge Buckler was asking you. What we know is that we believe that there were three female prison guards. Do you know or do you believe? Excuse me? Do you know or do you believe? There's a difference. Yes. There is a difference, Your Honor. We weren't able to explore it enough. We were told during the investigation that these three female prison guards during the same time period had had sexual relations with male inmates. One of them I talked to her husband. One of them we were told was pregnant. Didn't have information on the third one, although I had names of the three individuals. We filed a motion under Rule 16 for discovery. Simultaneously, we also filed under Rule 17b for a subpoena. I understood that the Armstrong case was the case that you needed to look to to determine whether or not the government had to provide you with the appropriate discovery. We believe that we made the showing under Armstrong. What we had was you have to show that there was a discriminatory effect and that there was a discriminatory purpose. And we both ---- What was the evidentiary showing that was made in Armstrong? What evidence was shown in Armstrong that would prove that the two comparators were similarly situated? Well, in Armstrong, the Supreme Court held that there wasn't an appropriate showing. What they had tried to do was they had used an affidavit from paralegals saying that blacks were the people who were charged with crack cocaine under the crack cocaine statutes. There was no showing that there were white people who were similarly situated who were not charged. And the court said we ---- you have to ---- this isn't enough evidence. You have to be able to show that there are people who are similarly situated who have not been charged. That's the same problem you have. And what's enough to show that someone is similarly situated? What is the strongest case that you have that supports your argument that the parties you sought discovery on were similarly situated to your client? Well, I think the fact that you have three inmates from a different gender or three prison guards from a different gender who have done the same thing ---- But that's the question, isn't it, whether they did the same thing? That's the problem. Well, it is to the extent that the court is inferring that they could have made this decision based because there was a force involved. But wasn't it your burden to initially to do something, I don't know, an affidavit or something from one of these people saying that this either of the victim, that it was forced or the perpetrator, that there was force from someone as opposed to it being entirely consensual? No. I don't believe it was, Your Honor. That was what the district court focused on was whether there was force. And he basically implied that there was force because they were female prison guards and that they would not have to force the men to have sex with them. Well, leaving that aside, I mean, but here the evidence was that there was some force. Well, at least the allegation was. The evidence ends up being there is no force used. But the allegation was that there was force. That's all it was, was an allegation. And at the close of the case ---- But that's the question. The question is, on what basis did they decide to prosecute them? The fact that they eventually lost doesn't matter, right? Can it matter that they lost on the force? I think it could, because it was selective prosecution. They can always add force. But that begs the question. The issue becomes what was the impetus for the prosecutorial decision. And so no one knows how the case is going to come out at the point that the prosecutor exercises his discretion to bring charges. So the fact of a verdict one way or the other can't be the deciding factor for whether or not they were similarly situated at the time the prosecutorial discretion was exercised. Your Honor, would there be any question in anyone's mind if the statute said that male guards cannot have sex with female inmates, but it's okay for female guards to have sex with male inmates? And keeping in mind that in Armstrong, it's talking to ---- That's a different question than whether or not the male guards would be prosecuted or the female guards would be prosecuted. That's a different question rather than the question of when does the prosecutor exercise his discretion to bring charges. But if you show that they're not prosecuting any female guards for the same conduct, the same conduct ---- Well, you didn't have ---- First of all, you didn't show they weren't prosecuting any female guards. You didn't show that. You showed that there were three people who they didn't prosecute. And the prosecutor never came back and said, oh, well, here's the other female guards that we prosecuted. As far as we knew, they had never prosecuted any. Well, but that wasn't your allegation, was it? Because you weren't in any position to demonstrate that, were you? We were in a position trying to get discovery. And I would direct your Court also that under Armstrong, Armstrong deals exclusively with Rule 16. It doesn't deal with subpoenas under Rule 17. We were seeking the investigation to try to ---- It then goes on to a discovery issue on an equal protection ground, right? Yes. Right. So it didn't deal exclusively with Rule 16. Well, it doesn't deal with Rule 17, which is what Justice Rehnquist says in Armstrong is that we're going to set up a barrier to defendants coming in to try to prove selection of constitutes. I mean, I'm sort of curious, in reading the opinion, you know, what the second half of the opinion was about, because it wasn't about a mandatory discovery under Rule 16 for a defense, because they'd already decided that it wasn't a defense and you didn't have that discovery. Right. So then they go on and they start talking about a separate sort of non-defense, which was the selective prosecution allegation. And they start setting up discovery rules for that defense, which seemed to be coming out of their heads. I mean, there is no rule governing that. Is that correct? I think that's right, Your Honor. All right. So therefore, whatever those rules are, must be governing you, too. I mean, where they're coming from, we don't precisely know, but wherever they're coming from, there's no reason they don't apply to you. Rule 17 allows us to – I mean, the government's position when I filed the subpoena was they took no position. If I subpoenaed records from the Bureau of Prisons, it was fine with them. It wasn't until the judge, they opposed my motion under Rule 16. And in the Armstrong case, what the Court is dealing with is it doesn't want to use the government to help defendants prove their case. In Armstrong, they were looking for selective prosecution nationally. What – We're over your time, so please wrap up. Thank you, Your Honor.  Thank you very much. We'll give you a minute in rebuttal. Yes, sir. May it please the Court, counsel. Good morning. My name is Bill Solomon. I represent the United States on this appeal. If I could start with the standard for a defendant to obtain discovery. It's a rigorous standard, as is the standard to prove a selective prosecution. Where does it come from, by the way? It comes from Armstrong. And I agree, I think they just came up with a standard. I think it did just come out of their heads, Your Honor. I think you're correct. But they did come up with a standard, and that's a standard by which we are governed here. And that standard is, it is in order to prove a selective prosecution claim or in order to obtain discovery in support of a selective prosecution claim, a defendant must make two showings. It must first show that the Federal prosecutorial policy had a discriminatory effect, and then it must show that that policy was motivated by a discriminatory reason as well. So how is a defendant to make that showing without access to the information that would make that showing? Well, in this case, Your Honor, as the appellate points out in his briefing before the district court and in the briefing before this Court, he did conduct some interviews. He conducted interviews of BOP employees who were union representatives. Apparently, today he said he spoke with the, I believe, husband of one of these individuals who supposedly had sex with an inmate. So he had conducted some investigation. However, he didn't provide that investigation to the court. He simply provided an assertion to the court based upon that underlying investigation of what he believed that investigation showed. He used to clarify for a minute. My reading of Armstrong is that although as to the eventually selective prosecution claim, you do have to show both prongs. As to discovery, you only have to demonstrate a credible showing of different treatment of similarly situated persons. You don't have to get into the heads of the people making the decision at that stage, which makes sense, because how could you until you got the discovery? So you have to demonstrate different treatment of similarly situated persons. Your Honor, I believe under Armstrong you have to show both different treatment of a similarly situated person. On the merits, eventually. But to obtain discovery, I believe you have to make that showing as well. I don't see any way to do that. And I would turn the Court's attention to United States v. Turner as well, a decision from this Court, and it specifically, that was another case where the defense sought discovery in a selective prosecution case. It's cited at 104 F. 3rd, 1180, and a Penn site would be at 1185 in Turner. This Court specifically dealt with the other prong. The appellees have offered no evidence whatsoever of an intent. I'm reading from page 1185, Your Honor, where this Court says, and this was a case where the government had appealed because the district court dismissed the charges when the government failed to provide discovery in that case, and the government appealed. This Court said, The appellees have offered no evidence whatsoever of an intent on the part of the prosecutors to prosecute them on account of their race. And Turner was a case in which the defense had sought discovery to support a selective prosecution claim. Well, it went on to say, And the prosecutors and FBI investigators have under oath denied such motivation. We don't have that here. We don't have that here. But wasn't Turner a merits case, not a discovery case? I believe it was a discovery case, Your Honor. It was. I thought it was a discovery case just like Armstrong. No, it wasn't. The district court had dismissed the indictment. It had dismissed the indictment. Right. It was a merits case. Armstrong was a discovery case, and Armstrong just says that you have to show that there was a difference between similarly situated people. Okay. Well, and that may be the case, but that showing was not made here, Your Honor. Neither showing was. In fact, the government's position is that there was no evidence before the district court at all that these individuals were similarly situated. Where do you get the line? I mean, on the one hand, as you talk about Armstrong, I mean, you can't just say, okay, we think there must be discrimination. So go open up all the files for everything, including files of cases where the defendant wouldn't even have, except for your own case. But still, how do you prove it? How do you find your facts if you can't have discovery? What should he have done here? Assuming that — let's assume there was some actual discrimination. What did he have to show before he got discovery? Well, what he could have — How could he have done it? Well, what he could have done here, he did — he does state that he conducted interviews here. He conducted interviews of BOP employees who were union representatives. He could have presented affidavits from those union employees to the district court stating what conduct was at issue here by these five Bureau of Prisons employees. That's one method he could have used. He could have — he states today that he interviewed the spouse of one of these prison guards. He could have submitted an affidavit from that spouse stating what the conduct at issue was. But the thing was that here, the district judge put a lot of emphasis on the absence of demonstration of force. The force in this case, as alleged, was very minor, right? Well, the district court found that it was insufficient to sustain a conviction. Right. But there was — Even as alleged, it was — I mean, it was alleged generally, I suppose. But if you looked at the actual facts, I mean, maybe he just didn't do a very good job of presenting his problem, because, I mean, the force was essentially pushing people's heads and stuff. Yes, it was, in fact. But there was no suggestion that he had coerced the people into doing anything. I mean, or that he was raping people or anything like that. The evidence was what? So, I mean, it's possible that if he'd done a — that the problem may have been in the presentation, essentially, and in not trying to demonstrate that — the kind of force that was at issue here. And, of course, that's partly because it was so early on in the — in the case. No one quite knew what was going to be demonstrated. So I guess the issue is, can the fact that he didn't — was the simple problem that he didn't say that these people did the same kind of force, whatever that force is that this guy did, is that the problem? It is not necessarily the same kind of force. It's that there was no evidence before the district court at all that they had engaged in any force. In fact, the — That one, I'm sorry. That the other BOP employees had engaged in any force whatsoever, it wasn't necessarily even the nature of the force. It was that there was no evidence of force at all. And, in fact, the appellant concedes on page 8 of his opening brief that he didn't know whether any force was used by any of those five BOP employees. So, therefore, they could not have been similarly situated to this defendant. They could not have possibly been charged with a 2243B. I mean, that's what's very odd about this case. They could have been similarly situated to what the government said it thought about this defendant, right? It was turned out not to be true. Well, Judge, and I don't want to parse words, but there was evidence before the district court that force was used, and the court has characterized it correctly. There were two victims in this case. Now, the government agreed to dismiss the force charges against the first victim in this grove. But as far as the second victim is concerned, she did clearly testify that the defendant forcefully pushed her head down to give her to give him oral sex, and that she was scared by that conduct. So there was, while the district court found that the evidence was insufficient to sustain a conviction, there was not only an assertion in the charging document of force, but there was testimony at trial that the defendant did engage in force in having Ms. Parker perform oral sex on him. So it wasn't that there was a complete lack of evidence. It was just that the district court found the evidence was insufficient to sustain a conviction. If I could go back to Armstrong, the evidence, if you will, that was presented here is very similar to some of the evidence that was presented at Armstrong. In Armstrong, there was an affidavit submitted by one of the attorneys who represented one of the petitioners that was based on that attorney's meeting with an intake counselor at a drug treatment facility. And that intake counselor told the attorney that in the intake counselor's opinion, there were an equal number of users and distributors of crack cocaine that were Caucasian. And then there was another affidavit submitted by a defense attorney who practiced in the state court saying that he saw an equal number of Caucasian or non-Caucasian defendants in state court. And the court in Armstrong specifically found that that evidence was insufficient, that it was based on, and I will refer to page 470 of the Armstrong opinion, referring to those affidavits, respondent's affidavits which recounted one attorney's conversation with a drug treatment center employee and the experience of another attorney defending drug prosecutions in state court recounted hearsay and reported personal conclusions based on anecdotal evidence. That is all we have in this case. We have hearsay reported by Martinez's counsel based upon interviews he had with BOP employees and then his personal conclusions. What was meant when your opposing counsel said that the Bureau of Prisons was willing to give us the information, but what, the government opposed it or the court? I believe he said the government didn't take a position initially when he requested discovery. Right. And I don't think that really comes into play here. Was the problem that the judge wouldn't issue the subpoena? Was that the problem? Well, the problem was there was no evidence before the judge upon which to base a decision to issue a subpoena. I want to know, because they had to ask the judge to order the discovery? Is that why? Yes. Under Armstrong, because they couldn't get discovery through Rule 16, the automatic disclosure provisions, they had to make an affirmative. The government and the Bureau of Prisons could have just said, sure, here's the information? It could have. But under Armstrong, the prosecution took no opposition. It does. I mean, what's disturbing about this case, as one of my colleagues said earlier, is, you know, that you'd think you'd like to know the answer to this question, i.e., the government. And it's really somewhat unclear why you'd be so obstreperous about this stuff. Well, I believe it's just, and I don't, as Mr. Maynard said, that the government didn't take a position initially. And I think what the court was looking for was just the showing that is required by Armstrong for a definitive entitlement. If the government doesn't take a position and the Bureau of Prisons is willing to do it, how does the judge get into it at all? Why don't you just give him the material? Well, there is still a required showing, a threshold showing that needs to be made by the defense in order to obtain the discovery. That's what I'm trying to find out. Why and how? Where does that come from? It comes from Armstrong, Your Honor. It's a – selective prosecution. I mean, if you're willing, if they'd gone to you and said we want this material and you couldn't just give it to him? Well, I believe he had come – I don't know if he had come to the prosecutor, but he had asked for the material under Rule 16. And I believe the prosecution took the position that you're not entitled to the discovery under Rule 16. Well, then you're not entitled to it under Rule 16. Suppose he said, fine, you know, I'm not entitled to it under Rule 16, but give it to me. Don't, you know, it would be – everybody would, you know, I would have a claim, but not only that, you want to know what your people are doing. Well, who ultimately said no? I mean, if the government said, well, we don't care, are you saying that the judge nevertheless – I mean, ordinarily, a subpoena, well, maybe to the Bureau of Prisons, I don't know if it needed the judge's authorization? I don't know if the prosecutor said we don't care. The prosecutor said under Rule 16 we're not required to provide it. But the defendant does have a burden. There is a presumption. But he said the government didn't take a position. I believe on the subpoena he said the government didn't take a position. As far as when they came and asked for it. I understand that. Okay. And we understand that, because under Armstrong, he didn't have a Rule 16 right to the discovery, right? Correct. We want a subpoena. The government doesn't impose it. The Bureau of Prisons doesn't impose it. How did it even get to the judge? Well, he filed a motion for the – he filed a request for the subpoena. That's how it got before the judge, Your Honor. And in order to get that discovery, he has to make the required showing under Armstrong, which he didn't do. Are you saying that the government came in on the request for a subpoena, if that's the way it happened, and said we don't take a position and that the judge still said no? I believe that initially that may have happened. There was a hearing set, and the government obviously did take a position, Your Honor, and opposed the request and provided it. Once he got to court, the government took a position. I'm sorry, Your Honor. Once he got to court, the government took a position. Prior to that, the government had not taken a position. Yes, Your Honor. Before the district court, the government did take a position and actually pointed out another case that had been brought against another male prison guard. But the bottom line here is that the defendant did not make the required threshold showing, didn't present any evidence to the district court to support that showing. Okay. Thank you very much. Very helpful argument. We'll give you one minute in rebuttal. It would be helpful to me if you tell us a little more about the procedure here. Your Honor, in the appellant's excerpt of records at ER 38 through 39, it's the response of the government to the motion for the issuance of subpoena. And what the government said is his motion for a subpoena indicates he is proceeding in that manner as well. And the United States takes no position on that motion. The judge is the one who raised it. What happened was I had called the prosecutor and asked for discovery as we normally do. She said, we don't have it. And I said, well, I'm going to file a motion. So I filed a motion under Rule 16. We don't have it, meaning the prosecutor didn't have it. The prosecutor said she didn't have the information. She's the one who actually told me, file the subpoena with the Bureau of Prisons. Right. So I did the two things. I filed a motion under Rule 16, and I filed for the subpoena under Rule 17. So you couldn't serve the you couldn't serve a subpoena on the Bureau of Prisons without permission from the court? That's what I understood. And the court and the government didn't oppose the subpoena at first. Did the Bureau of Prisons? When the argument started, then they opposed it orally. And what the information the Bureau of Prisons would have had would be why presumably these guards were dismissed? I was looking for the employment files to determine why. I saw. And the subpoena, which is attached at ER 40 through 42, lists the names of the individuals and I'm sorry, it's ER 44, the individuals that I want at their employment files. Counsel, page 38, it says the United States hereby responds to defendant's motion for discovery and asks this court to deny the motion. I thought you said they didn't take a position. Read 38, Your Honor, at the bottom. It says his motion for a subpoena indicates he is proceeding in that manner as well, and the United States takes no position on that motion. That's the bottom of page 38. He was opposing the rule 16, and it seems you were just precluded by Armstrong as to that. Yes. Okay. So you're saying that the government only objected to the motion for discovery, but not the subpoena. Yes. So what was the difference between the the same information was being sought, just two different procedural mechanisms for getting the same information? Yes. One procedural mechanism was the government has to go out and get it for me, which is what Armstrong is complaining about. Justice Rehnquist says this place is too big of a burden on the government to have to go out and do this discovery for a fishing expedition. My point was, is that under Rule 17, I issued a subpoena for the employment files of five particular individuals that I believed were similarly situated to my client, had done what he was accused of doing, and had been treated differently. Well, then it was up to the court to determine whether or not the subpoena should issue. There was nothing inappropriate about the court at that point having been requested to issue a subpoena, delving into whether or not it was appropriate for the subpoena to issue. The court became an advocate for the government at that point. Prior to that, routinely you ask the court, a district court, to issue a subpoena and nobody else. Well, I mean, there is another set of interests here, and that's the other individuals and their employment files, i.e., to have their employment files discovered is obviously something of an invasion of privacy of them. In a civil lawsuit, we get employment files all the time. Of other people? No, you don't. No. Of other individuals? And enter into protective orders to cover those things. Right. And there has to be a pretty good reason. Yes. Yes. I mean, you have to make some threshold showing. And the issue is whether you made the threshold showing, because I can see that the if you're going to start saying, okay, the government, not that they have the information, it should turn it over, but you have to go develop this information in case we have it. And then how far should they go anyway? Should they, in that case, go look at employment files of everybody who's been dismissed? I agree with the court.  But under the other, under Rule 17, or, you know, under the subpoena, it's a question of whether you made a sufficient threshold showing. And I believe we did. Okay. I mean, I explained why we needed it and what the purpose was. We weren't hiding the ball here. All right. You've used your time. Thank you both. It's an interesting problem. United States v. Martinez is submitted. We're going to go to Maeder v. Holder. And for planning purposes, we're going to take a short break after the Maeder case.
judges: Bucklo, Berzon, Rawlinson